# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

No. 98-3474

_____

Emerson Electric Co.,      *
     *
            Appellant,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Eastern District of Missouri
First State Insurance Co.,      *
     *       [UNPUBLISHED]
            Appellee.      *

_____

Submitted: April 21, 1999
Filed: October 18, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN,[1] Circuit Judges, and WOLLE,[2] District Judge.

_____

PER CURIAM.

Emerson Electric Co. (Emerson) appeals the district court's grant of summary judgment for First State Insurance Co. (First State) in Emerson's diversity-based lawsuit seeking interpretation or reformation of a policy of excess insurance issued

_____

[1]The Honorable Roger L. Wollman became Chief Judge of this Court on April 24, 1999.

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

by Integrity Insurance Company (Integrity).  We affirm on the basis of the district court's[3] well-reasoned decision granting First State's motion for summary judgment.[4]

I.

To cover its risk of liability losses during 1982, Emerson retained the first $4,000,000 as a self insured retention (SIR), obtained from Integrity the next $5,000,000 of coverage, and obtained from First State the next $20,000,000 of coverage.  That year Emerson exhausted its SIR and incurred liability in judgments and settlements that did not exceed Integrity's $5,000,000 coverage.  Emerson contends, however, that Integrity's policy also covered attorney fees and expenses that, added to the amount of judgments and settlements, exhausted the $5,000,000 coverage and invaded the First State policy.  Emerson's financial stake in the issue increased when Integrity, adjudged insolvent, was placed in receivership.  Emerson brought this action against First State for a declaratory judgment establishing its interpretation of the Integrity policy language, or in the alternative for reformation of the insurance policy.

Deciding cross-motions for summary judgment, the district court held the Integrity policy unambiguously provided that costs of defense were not charged against the Integrity $5,000,000 coverage, that First State coverage was not reached, and that the record did not support reformation of language that was unambiguous.  In this diversity case, we review de novo questions of state law and search the summary judgment record for genuine issues of fact.  United Fire & Cas. Co. v. Gravette, _____ F.3d _____, _____ (8th Cir. 1999).  We are satisfied the district court correctly applied principles of Missouri insurance law to a record that contains no genuine fact issues.  The Integrity policy language plainly means what First State contends.  The Integrity policy did not provide that attorney fees and costs of defense should be charged against its $5,000,000 limit.

---

[3]The Hon. Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[4]The unpublished district court decision is captioned Emerson Electric Co. v. First State Insurance Co., No. 4:96CV2316 (E.D. Mo. Aug. 20, 1998).

II.

The district court properly focused on section 4 of the "Insuring Agreements" in the Integrity policy. Section 4(c), describing how the Integrity policy covers legal defense costs, states in pertinent part:

> [T]he Company shall in addition to the amount of ultimate net loss payable; (1) defend any suit . . ., (2) pay all expenses incurred by the Company . . ., (3) pay premiums on appeal bonds . . ., (4) pay reasonable expenses incurred by the insured at the Company's request . . . .
> The Company shall not be obligated to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments and settlements.

The district court read this policy language to mean that the Integrity $5,000,000 coverage would be exhausted only by Integrity's payment of judgments and settlements; defense costs and expenses would not be included in drawing down the $5,000,000 coverage. We agree with the district court's reading of this unambiguous language.

Emerson argues that section 3 of the policy contradicts section 4. Section 3 provides in pertinent part:

> In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted or reduced, . . . this policy shall, subject to the Company's limit of liability and other terms of this policy, . . . continue in force as underlying insurance for the remainder of the policy year . . . or until the Company's aggregate limit of liability . . . is exhausted, <u>but not for broader coverage</u> than was provided by the exhausted underlying coverage.

(Emphasis added.) Emerson contends the phrase "not for broader coverage" means the Integrity policy would be drawn down in the same way as the exhausted underlying SIR, which was drawn down by costs of defense as well as settlements and judgments. Emerson argues that First State's interpretation implicitly expands Integrity's coverage beyond the underlying SIR, in violation of section 3 referring to "not for broader coverage." The district court properly rejected that strained reading of the policy. Emerson's reading is incompatible with and would read out of the policy section 4,

-3-

quoted in part above, that states explicitly Integrity would defend claims at its own expense until its policy limit was exhausted "by judgments and settlements."

Emerson also contends a close reading of many other provisions of the Integrity policy supports its interpretation, while First State's interpretation is "a narrow, mechanical reading." The district court, addressing each of these arguments, carefully explained why the unambiguous language of section 4(c) trumps all other interpretations proffered by Emerson. The district court properly held First State, not Emerson, was entitled to summary judgment in its favor.

III.

We also agree with the district court's grant of First State's motion for summary judgment on Emerson's theory that the Integrity policy should be reformed. An insurance policy will only be reformed upon a showing that the parties made a mutual mistake in constructing the policy. See Urban Expansion, Inc. v. Fireman's Fund Ins. Co., 592 S.W.2d 239, 242 (Mo. App. 1980). The summary judgment record contains no competent, admissible evidence that Integrity and Emerson mutually failed to express their intentions in the excess insurance policy. Emerson presented no affidavit concerning the intent of Integrity when the "Insuring Agreements" were drafted by underwriters. Emerson's only affidavit expressed views of a former Integrity employee who was not involved in the underwriting process that created this insuring agreement.

We entirely agree with the decision of the district court granting summary judgment for First State and against Emerson on its policy interpretation and reformation claims.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-